## IN RE WILL OF M. SWAIM.

(Filed 7 May, 1913.)

**Wills—Interpretation—Detached Sheets—Subscribing Witnesses—Evidence of Authenticity as a Whole.**

It is not necessarily required for the validity of a will that several sheets of paper purporting to be one are physically attached together at the time the witnesses subscribe; and it is sufficient if it appears that the several sheets were written by the same person at the same time, were all read to the testator as his will, and were present at the time of the execution, and the papers themselves, by coherence and adaptation, and by their internal sense, bear evidence that, while separate, they were connected in the mind of the testator as a whole.

APPEAL by caveators from *Daniels, J.,* at February Term, 1913, of ALEXANDER.

A paper-writing purporting to be the last will and testament of M. Swaim was offered for probate before the Clerk of the Superior Court of Alexander County, and a caveat was filed thereto. The paper-writing consists of one sheet, of four pages of legal-cap paper, which pages are in the handwriting of J. L. Gwaltney, Esq., and one sheet of four pages, one page of which sheet was written in the handwriting of said Gwaltney, detached, the two sheets never having been fastened together.

Mr. Gwaltney testified that the paper-writing was in his handwriting; that it was signed in his presence and in the presence of Mr. Carson; they saw the testator sign the paper. The paper-writing was signed by Mr. Swaim and Messrs. Gwaltney and Carson, on the last sheet on the first page thereof, as subscribing witnesses. Mr. Gwaltney folded the paper, put it in an envelope, and, his recollection is, wrote across the envelope, "M. Swaim's Will," and then handed it to Mr. Swaim. The signature of Mr. Swaim is on the second or detached sheet.

*In re* SWAIM'S WILL.

W. H. Carson testified that he was register of deeds, in 1911, for Alexander County, and his name, as appears upon the sheet of paper, was written by himself in Mr. Gwaltney's office, in the presence of Mr. Swaim; he signed the paper in his presence and Mr. Gwaltney's. He signed the only sheet that he has any recollection of seeing; it was on the table. He does not remember there being any other sheet there; it might have been or it might not. Don't remember seeing but one sheet, and knows nothing about it except the sheet he signed.

Mr. Gwaltney further testified that both sheets were on the table at the time of the signing by the testator and the witness, and that he read both sheets to Mr. Swaim before he signed his name.

The paper begins: "I, M. Swaim, of the county and State aforesaid, being of sound mind and disposing memory, knowing the uncertainty of life and the certainty of death, do make, publish, and declare this to be my last will and testament in manner and form following, to wit:" and the last five lines on the fourth page of the first sheet are:

"ITEM 7. It is my will that after the bequest to my wife has terminated, that all my solvent credits, money and effects of every description (including the tract of land on"—and the first page of the second sheet is as follows: "which Finly Kerly now lives, containing 130 acres, more or less, and upon which he has been living since the death of my daughter Mag, after the death of the said Finly Kerly), shall be converted into money and so distributed among my children as to make them share equal in my effects.

"ITEM 8. I hereby constitute my trusted friend, James Watts, my lawful executor, to execute this my last will and testament, and every section and clause thereof, according to the true intent and meaning of the same.

"In witness whereof I have hereunto set my hand and seal, in the presence of J. L. Gwaltney and W. H. Carson, who, at my request and in my presence, signed their names as witnesses thereto. This July 1, 1911. All interlineations and erasures made before signing.          (Signed) M. SWAIM [SEAL].

Witness:

    J. L. GWALTNEY,
    W. H. CARSON."

*In re* Swaim's Will.

It was admitted that Mr. Swaim was of sound mind, and that there was no undue influence, the caveators resting their case upon the position that as there was no signature of the testator or of the witnesses on the first sheet of paper, and as it was not attached to the second, it was no part of the will.

There was a verdict in favor of the propounders, and the caveators appealed from the judgment rendered thereon.

*J. L. Gwaltney and W. A. Self for propounder.*
*F. A. Linney, J. H. Burke, and L. C. Caldwell for caveators.*

ALLEN, J.  We have carefully considered the earnest and learned argument of counsel for the caveators, and recognize the danger of permitting detached papers to be established as one will, but difficulties of administration cannot justify the refusal to exercise jurisdiction, and we find an unbroken line of authority in England and America in support of the doctrine as contended for by the propounders.

In *Bond v. Seawell,* 3 Bur., 1774, *Lord Mansfield* said: "If the first sheet was in the room at the time when the latter sheet was executed and attested, there would remain no doubt of its being a good will and a good attestation of the whole will"; and in Wikoff's Appeal (15 Pa. St., 597), in which the writing offered for probate consisted of different pieces of paper, written at different times, the last of which was signed and witnessed, *Chief Justice Gibson* said: "It is a rudimental principle that a will may be made on distinct papers, as was held in *Earl of Essex's case,* cited in *Lee v. Libb,* 1 Show., 69. It is sufficient that they are connected by their internal sense, by coherence or adaptation of parts."

In Cyc., vol. 40, p. 1093, one author says: "A will need not be written entirely on one sheet of paper, but may be written on several sheets, provided the sheets are so connected together that they may be identified as parts of the same will. Connection by the meaning and coherence of the subject-matter is sufficient, as physical attachment by mechanical, chemical, or other means is not required, although it is sufficient when made"; and in 30 A. and E., 580: "It is a rudimentary prin-

ciple that a will may be made on distinct papers. It is sufficient that they are connected by their internal sense, by coherence or adaptation."

In the case before us, every requirement of the law has been complied with.

The evidence of Mr. Gwaltney, whose credibility is not challenged, establishes the fact that the two sheets were written at the same time, that both were read to the testator as his will, and were present at the time of the execution, and the papers themselves bear intrinsic evidence that, while separate, they were tacked together in the mind of the testator.

On the first page of the first sheet the testator says, "I, M. Swaim, do make this my last will and testament." The fourth page of that sheet concludes in the middle of an item of the will and a description of a tract of land, which is concluded on the first page of the second sheet, and both sheets are in the handwriting of the same person.

We find

No error.