[Civ. No. 9415. First Appellate District, Division One.—July 23, 1934.]

In the Matter of the Estate of HELEN H. HUGHES, Deceased. ALFRED MALPAS, Appellant, v. STEPHEN KNIGHT WHIPPLE et al., Respondents.

Myron Harris for Appellant.

Donahue, Hynes & Hamlin and Oliver Dibble for Respondents.

JAMES, J., *pro tem.*—On June 24, 1928, the decedent executed her last will and testament and deposited the same in her safe deposit box in the Oakland Bank. This will was an holographic will but drawn with much care and circumstance; and, notwithstanding its being an holographic will, was nevertheless witnessed by two witnesses. By the terms of this will, among other provisions, she bequeathed to her nephew, Alfred Malpas, the sum of one thousand dollars and also one-fifth of the residue of her estate. On July 28, 1931, she wrote and mailed a letter to her nephew, Alfred Malpas, as follows: "Dear Al. In case anything should happen to cause me to pass on, I want you to have $5,000 immediately, to settle up your debts & to give you a little

start, so you had better have Amer. T. & T., Gen. Motors, or Union Oil stock which will bring that amt. Am just leaving for the hosp't. If at any time, I pass on, I want all my friends to come to my services, and I want soft music played but no singing & to be put in our lot in Mountain View. There is just room for me. A big heart full of love to you, dear, from your Aunt Nell Hughes. Oakland, July 28th, 1931. My will is in my safe box in Oakland Bank.'' At the time this letter was written she was about to go into the hospital to undergo a surgical operation, and after writing and mailing this letter she did go to the hospital, either that day or the following day, and underwent the operation as planned. From this operation she recovered and lived until February 1, 1933, when she died—nearly two years later—of a complaint or illness entirely unconnected with the subject of her previous operation.

The will of June 24, 1928, was filed and admitted to probate, and the letter above mentioned was filed, together with a petition for its probate as a testamentary document. The probate of such instrument was opposed in the court below and, after hearing, the superior court denied probate of the document on two grounds: 1. On the ground that the document was not testamentary in character; and, 2. That if it was testamentary in character, it was conditional upon her dying as the result of the pending operation and that, if she did not die as the result thereof, the document never became effective. From this order denying probate to the instrument in question this appeal is prosecuted.

In determining the validity or effectiveness of an instrument claimed to be testamentary in character, there are certain considerations which must guide the court in its conclusions: First. The testamentary capacity of the decedent; Second. The conformity with the statutory requirements in the execution of the instrument in question; and Third. The intention of the testator in the execution of the document in question.

When, as in this case, the capacity of the testator is conceded and the statutory formalities have been complied with, there remains to the court only a consideration of the last element of the intention of the testator in executing the document in question. The testatrix, having testamentary capacity and her act being unchallenged as free and volun-

tary and understandingly done, and the statutory requirements being observed, the character of the instrument will be determined by the test of the intention of·the testatrix. If she intended this as a will or codicil this court is bound to give it effect as such, and in determining such intention the court is guided primarily by the words of the instrument itself. If these are not sufficiently clear, a resort is had to the conditions under which the same was executed.

■ There are no definite forms or fixed terms which will invariably determine the testamentary character of an instrument. The same expressions may lead the court to determine one instrument as testamentary in character which, under different circumstances, would lead the same court to determine another instrument to be not testamentary in character. In construing such an instrument, effect must be given, if possible, to all terms and expressions therein contained, and where a doubt arises resort may be had to the conditions under which the instrument was written to determine what was in the mind of the party when it was written.

■ Taking the instrument here in question in its entirety without the aid of any extraneous circumstances, it cannot be said, with any degree of certainty, that this instrument was intended by the writer as a testamentary disposition of any of her property, and therefore in its construction the court is forced to an examination of the circumstances under which it was written and such other extraneous circumstances as are presented and appear to have a bearing on the testamentary question.

At the outset, it is significant that the two instruments—the will of June 24, 1928, and the contested document of July 28, 1931—are both holographic in form; but the former is drawn with much technical detail and care, showing a belief in the testator of the necessity of a formal document to effect a disposition of her estate, while the latter shows no such care, but is merely in the form of an abbreviated note which expresses an apparent fear of the result of her impending operation, some suggestions as to the services at her funeral and the disposition of her remains, and some advice to her nephew to whom the note is addressed, and an expression of a desire that he should have $5,000 immediately upon her death. Another very significant cir-

cumstance is found in the concluding sentence of this document, in which she advises that her will is in her safe deposit box in the Oakland Bank. There is no discussion or suggestion that that will should be changed. There is nothing in this document to indicate that it is intended to change the terms of that will. On the contrary, she indicates with the last sentence of this note that the document therein referred to is her will and directs where it is to be found. While at the time of her death the value of her estate was such that, by the terms of her will of June, 1928, this nephew would not receive in all a sum equal to $5,000, it is extremely probable that at the time she penned the letter of July, 1931, she was still under the impression that her bequest to him would amount to that sum; and it is far more reasonable to assume that that was in her mind when she wrote this note than to assume the other conclusion contended for here; that she was intending thereby to execute a codicil to her former will.

We are of opinion that the instrument in question was not intended to be testamentary in character. This conclusion renders it unnecessary to pass upon the other questions raised. Accordingly, the order appealed from is affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 13, 1934.

Seawell, J., and Preston, J., voted for a hearing.