[Civ. No. 4333.   Second Appellate District, Division Two.—October 23, 1923.]

In the Matter of the Estate of SUSAN MARY GOWAN JOHNSTON, etc., Deceased. FREDERICKA HOME FOR THE AGED, Appellant, v. SOUTHERN TRUST AND COMMERCE BANK et al., Respondents.

[1] WILLS—CODICIL—FINDINGS—EVIDENCE.—In a probate proceeding the findings of the trial court to the effect that the decedent intended and executed an alleged codicil as a codicil to her will are sufficiently supported where the matter held by the trial court to be a codicil is altogether in the handwriting of decedent, is written in ink, commences immediately after the signatures of the witnesses to the will proper, on the last page of that instrument, occupies the entire space on that page below the signatures, and concludes on a separate sheet of paper severed into parts by a jagged tear running across the written matter in such a way as to .separate the last line and a part of the line preceding from the remainder, the bottom of this sheet, below the handwriting, being torn diagonally across the page, and where the testator, in a letter written to the draftsman of the will three days after the execution of the original will, "wanted to know," referring to a visit to the draftsman's office when she had been unable to consult him, "if a special form would be necessary for a codicil or if I could write in my own hand what might be needed," and "would it need to be attached to the main Will to be legal?" even though the will proper, together with the matter written at the bottom of its last page, was found in the bedroom of the testator, and the separate sheet so severed was discovered in a writing-desk in another room in testator's place of residence.

[2] ID.—SIGNATURE TO CODICIL—SUFFICIENCY OF.—Such codicil was sufficiently "signed" where the name of the testatrix, in addition to being at the beginning of the codicil, appears by itself near the commencement of the separate sheet at the right end of a line upon which nothing else appears followed by a period, and the line next succeeding is commenced with a capital letter.

[3] ID.—USE OF EXPRESSION "OVER"—MEANING OF.—The use of the expression "(over)" at the end of the first part of such codicil is not to be given the limited meaning that the other side of the sheet on which the first part occurs should be looked to to find what is to follow, where the second part of the codicil plainly

connects with the first part and all the circumstances of the case demonstrate that the two parts together make a consistent whole.

APPEAL from an order of the Superior Court of San Diego County admitting codicil to probate as part of a will.  C. N. Andrews, Judge.  Order affirmed.

The facts are stated in the opinion of the court.

Sweet, Stearns & Forward for Appellant.

Chester C. Kempley, District Attorney, Albert J. Lee, Deputy District Attorney, and Hendee & Rodabaugh for Respondents.

WORKS, J.—In addition to leaving a will, concerning the authenticity of which no question is made, the decedent left behind her certain written matter which was by the trial court admitted to probate as a codicil to the will.  Fredericka Home for the Aged was a beneficiary under the will, but the bequest to that institution was revoked by the alleged codicil, if it shall be determined that the trial court properly admitted it to probate.  The Zoological Society of San Diego and the San Diego County Hospital are named as beneficiaries in the codicil.  The Fredericka Home appeals from the order of the trial court admitting the codicil to probate as a part of the last will and testament of decedent.

Several points are stated in the brief of appellant, but the determination of all of them depends upon the settlement of but one question: Was the evidence sufficient to support certain findings of the trial court to the effect that decedent intended and executed the alleged codicil as a codicil to her will?

The matter held by the trial court to be a codicil is altogether in the handwriting of decedent.  It is written in ink.  It commences immediately after the signatures of the witnesses to the will proper, on the last page of that instrument, occupies the entire space on that page below the signatures, but is not there concluded.  A photographic copy of the will, as well as of the alleged codicil, is before us.  We reproduce first the matter at the bottom of the concluding page of the will proper, together with its arrangement, in so

far as arrangement seems to be material to the question now
to be decided:

"Codicil ———————— La Mesa, San Diego Co., Calif.

"June 26th—1922—

"I, Susan Mary Gowan Johnston hereby revoke and cancel
the bequest to the Fredericka Home for the Aged as written
herein, and all relating to it.

"And I bequeath to the Zoological Society of San Diego the
sum of Two Thousand Dollars ———————— (over)"

The remainder of the codicil admitted to probate was
found on a separate sheet of paper, which had been severed
into parts by a jagged tear running across the written matter
in such a way as to separate the last line and a part of the
line preceding from the remainder. The sheet was found in
this condition after the death of the testator, but it has since
been pasted together and so appears in the photographic
copy. The bottom of the sheet, below the handwriting, did
not show a straight edge, but was torn diagonally across the
page, the remainder of the paper not being produced. The
matter on this separate piece of paper was as follows, both
as to context and arrangement:

"Continuation of the Codicil to my Will June 26/22—

"Susan Mary Gowan Johnston.

"And I further name and appoint the San Diego County
Hospital as Residuary Legatee under this Codicil of June
26/22—and direct that the funds obtained from the residue
of my estate be used for the purpose of a special Ward or
building for the necessary care and treatment of patients
who prefer to pay for Hospital services rather than accept
charity—the fees to be" (here are one or two unintelligible
words, illegibility apparently caused by tear) "and within
the means of working people to pay—while the care and
treatment of such patients to be of the best."

The will proper, together with the matter written at the
bottom of its last page, was found in the bedroom of the tes-
tator. The paper containing the second part of the alleged
codicil was in two pieces, separated by the tear already men-
tioned, and was discovered in a writing-desk in another room
in testator's place of residence, a place which appellant calls
her "literary workshop."

[1] The contention of appellant as to the insufficiency of
the evidence to support the findings may be separated into

several parts. It is said that the discovery of the opening portion of the codicil in one room and the remaining portion in another, together with the fact that the paper containing the second part had been severed by a tear, shows that the testator never intended that the matter thus found should be operative as a codicil to the will. If we concede for the sake of argument that the circumstances just mentioned, taken alone, do not show an intention to leave a codicil, we are at once to observe that other evidence in the record indicates such an intention on the part of the testator. Three days after the execution of the original will she wrote her counsel, the draftsman of the will: "I wanted to know," referring to a visit to his office at a time when she had been unable to consult him, "if a special form would be necessary for a codicil or if I could write in my own hand what might be needed if I tried to help some worthy object, and would it need to be attached to the main Will to be legal?" We have already remarked that the alleged codicil was written in ink, a circumstance tending in some degree toward the showing of an intent to leave a memorial of a permanent and final character. This circumstance is aided materially when we consider that the codicil was commenced on the last page of the will proper, which was a typewritten document of nearly three pages in length, carefully and formally executed and witnessed. The fact that the testator could inscribe the codiciliary matter in such an enduring form in such a place strongly indicates that her mind had finally crystallized in an intention to alter her will as originally executed. The finding of the two parts of the codicil in different rooms and the fact that the paper containing the second part had been severed into two portions by a tear, are strong circumstances, it must be conceded, but the other matters we have mentioned are of a substantial character, and we are bound to say that we can see nothing more than a conflict of evidence upon the question.

[2] It is insisted that the codicil is not sufficiently "signed." In it the name of the testator appears twice, first, at the beginning of the document, thus, "I, Susan Mary Gowan Johnston"; second, near the commencement of the second part. It is probable that the writing of the name the first time is to be considered merely as an identification of

the person (*Estate of Manchester,* 174 Cal. 417 [Ann. Cas. 1918B, 227, L. R. A. 1917D, 629, 163 Pac. 358]). Such appears to us, however, not to be the case as to the use of the name the second time. The use in that instance was not a part of a recital, as was the case in the first instance. The name stands by itself and is at the right end of a line upon which nothing else appears. It is followed by a period and the line next succeeding it is commenced with a capital letter. It is true that the second appearance of the name is not at the close of the codicil, but it is not necessary that it be found there in order to constitute it a valid signature to the document. The rule on this subject is stated in the opinion in *Estate of Manchester, supra:* "The true rule, as we conceive it to be, is that, wherever placed, the fact that it was intended as an executing signature must satisfactorily appear on the face of the document itself. If it is at the end of the document, the universal custom of mankind forces the conclusion that it was appended as an execution, if nothing to the contrary appears. If placed elsewhere, it is for the court to say, from an inspection of the whole document, its language as well as its form, and the relative position of its parts, whether or not there is a positive and satisfactory inference from the document itself that the signature was so placed with the intent that it should there serve as a token of execution. If such inference thus appears, the execution may be considered as proven by such signature." What, in elucidation of the problem now before us, may we gather from an inspection of the codicil itself, under the rule just stated? As we have already observed, it is written in ink and commences at the foot of the formally executed will. It begins with the word "Codicil." The second part commences, "Continuation of the Codicil to my will," followed by a date. Then appears the second writing of the name, set down in the manner which we have already described. We are of the opinion that the face of the codicil itself thus shows an intent upon the part of the testator to execute the paper by the use of her name in the second place in which it occurs. We find support for these views in *Estate of Mc-Mahon,* 174 Cal. 423 [L. R. A. 1917D, 778, 163 Pac. 669], and in *Estate of Streeton,* 183 Cal. 284 [191 Pac. 16], although it must be confessed that the facts in each of these

cases, while similar in some respects to those we now consider, are different in others. We are convinced that by the second use of her name, at least, the testator intended to execute the codicil at the time she wrote it. We have already determined in effect, under another head that she did not afterward change her mind.

It will be observed that we have said above that *Estate of Manchester, supra,* ''probably'' compels the view that the first use of the testator's name in the codicil here in question must be regarded solely for purposes of identification. We have employed that expression for the reason that in that case the instrument before the court was a will, as distinguished from a codicil. Whether the supreme court itself will regard that case as positively controlling in the instance of a codicil penned at the foot of a will by the testator identified in and by the will is for that tribunal to determine upon due occasion. In view of the construction which we place upon the second use of the name of the testator here, we do not find it necessary to do more than suggest this question as to *Estate of Manchester.* There is surely some difference between the facts in that case and in this. Whether there is a difference in the law to be applied to those facts we do not venture an attempt to decide.

[3] One of the appellant's contentions is that the codicil is incomplete for the reason that the second part is not connected with the first and therefore may not be considered with it. Appellant says that the use of the expression '' (over) '' at the end of the first part requires that we look only at the other side of the sheet on which the first part occurs to find what is to follow. It is true that the term is sometimes, perhaps usually, employed to indicate a continuation of written or printed matter on the reverse side of a paper upon the obverse side of which the matter is commenced. It is, however, frequently employed to indicate a continuation of matter upon a separate sheet. We are furnished with no citation of authority upon this point and have found none, but we do not hesitate to assert that the term in question is not to be given the limited meaning contended for by appellant. The second part of the codicil plainly connects with the first part and all the circumstances of the case demonstrate that the two parts together make a

consistent whole. No more is required to satisfy the testator's use of the expression ''(over).''

Order affirmed.

Finlayson, P. J., and Craig, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 20, 1923.