[L. A. No. 19710.   In Bank.   June 24, 1947.]

Estate of KONSTANTIN WUNDERLE, Deceased. MARION DI PAULO, Appellant, v. FRED R. WITTMER et al., Respondents.

Myer B. Marion and Eugene L. Wolver for Appellant.

Krag & Sweet and David T. Sweet for Respondents.

EDMONDS, J.—Three persons who were named in testamentary instruments made by Konstantin Wunderle are asserting rights to the property of his estate, and the appeal is from an order of the probate court admitting one of these documents to probate as his last will and testament. Certain procedural questions in connection with a motion to intervene and a motion to dismiss the appeal are also presented for decision.

In December, 1939, Wunderle made and duly executed a formal will, leaving 80 per cent of his property in equal shares to his sister, Ida Pieper, and Bertha Rothlisberger. The remainder of his estate was left to Fred R. Wittmer. On April 22, 1943, the decedent signed what purports to be a formal will giving everything he owned to Ida Pieper and naming Marion Di Paulo as executrix. Concededly, however, this instrument was not executed and attested in accordance with the statutory requirements, and it has not been offered for probate.

A few days later Wunderle wrote the following letter to his sister:

"Los Angeles, Calif 3, May 1943

"My dear sister Ida!

"Yours and Marg. letters thankfully received. Enclosed, the copy of my Testament the way I promised and have held it. Everything else I have discussed with you of importance. My wish is, for your own good, to come to me when my health starts to fail. You can see by the copy, A Wittmer in the Testament is not mentioned. A letter is ready for Mr. Wittmer, which you shall hand to him when my eyes are closed forever. I am sorry that you are having trouble with your teeth, stay well so you can enjoy my possessions. I wouldn't like if Mr. Wittmer would find out about my testament. Hope and wish that it remains a secret as long as I live. It wasn't necessary that you caused yourself trouble to send the smoke meat, it shows your thoughtfulness. The next time I will send Marg. a letter. From Fritzi, in San Jose, I also received word. Sorry I have to stop writing as I am starting to get nervous. Next time more, regards as always as well as to the family.

"Your Konstantin."

With this letter Wunderle enclosed a copy of the testamentary document of April 22nd.

Shortly after the death of Wunderle, Marion Di Paulo, named as executrix in the formal testamentary document of 1943, filed a petition for the probate, as an holograph will, of an undated written memorandum reading as follows: "The following lines declare that my will of December, 1939, is null and void, as a new will was made on April 22, 1943. Various reasons caused me to do that. Mrs. Ida Peiper is the sole heiress of all my possessions. Mrs. Ida Peiper will be in the house and live there after my death. 1200 No. Hazard Ave. For all favors rendered me by you, thanks. Konstantin Wunderle, Pasadena." The record discloses no evidence showing that this memorandum was either enclosed with, or attached to, the letter or the copy of the formal instrument which was sent to Ida Pieper, or that it is the letter referred to by Wunderle as "ready for Mr. Wittmer."

Three days after this petition was filed, Wittmer, who is named as executor in the instrument executed in 1939, petitioned for its admission to probate. The public administrator then requested letters of administration. Following a hearing, the 1939 document was admitted to probate as the last will of Wunderle and the petitions of Mrs. Di Paulo and the public administrator were denied. Her appeal is from that order.

No extrinsic evidence was introduced by either party in regard to Wunderle's testamentary intentions. The testimony relates entirely to the execution of the will which was admitted to probate and the genuineness of the memorandum offered by Mrs. Di Paulo.

The appellant takes the position that the date "April 22, 1943" mentioned in the memorandum written by Wunderle meets the statutory requirement that an holographic will must be "dated and signed by the hand of the testator himself." (Prob. Code, § 53.) But if that date was used for reference only, she asserts, either the date of the invalid formal will or the date of the letter to Ida Pieper supplies the necessary testamentary date. She also claims that the instruments disclose a testamentary intent. Another proposition advanced by her is that, by the letter, Wunderle republished and redated his holographic will. She also complains of the exclusion from evidence of certain documents.

In support of the order of the probate court, Wittmer insists that, because the memorandum written by Wunderle was

not dated by him, it is invalid. Moreover, it does not contain the requisite testamentary intent. He also maintains that Mrs. Di Paulo is not a party aggrieved by the order and, for that reason, she is not entitled to prosecute an appeal. A motion to dismiss the appeal upon the latter ground was thereafter made by him and is now pending. Ida Pieper, a beneficiary under the will admitted to probate and the testamentary instrument which is relied upon by the appellant, has moved for leave to intervene and become an appellant in this proceeding.

Considering, first, the procedural questions, if the disposition of a motion to dismiss requires a consideration of the appeal upon its merits, the motion must be denied. (*Estate of Sayles,* 212 Cal. 437, 438 [298 P. 971] ; *Christin* v. *Story,* 211 Cal. 381, 382 [295 P. 515] ; *Pacific States Sav. & L. Co.* v. *Mortimer,* 70 Cal.App.2d 811, 813 [161 P.2d 684].) However, there is an exception to this general rule. An appellate court has inherent power to dismiss an appeal where an examination of the judgment roll demonstrates that the appeal is frivolous. (*Stern & Goodman Inv. Co.* v. *Danziger,* 206 Cal. 456, 457 [274 P. 748] ; *Sonoma M. Co.* v. *National etc. Corp.,* 189 Cal. 433, 434 [208 P. 962] ; *Pacific States Sav. & L. Co.* v. *Mortimer, supra,* p. 813.)

In the present case, the motion to dismiss is based upon the same ground as is urged by Wittmer as justifying an affirmance of the order of the probate court, namely, that Mrs. Di Paulo is not an aggrieved party. The appellant argues that she is entitled to prosecute the appeal because the holographic document incorporates, by reference, the testamentary document of 1943 and is therefore valid. This argument clearly involves a determination of the case upon its merits. Certainly, from an examination of the judgment roll it may not be said that the appeal is frivolous. A ruling upon the motion, therefore, requires an examination of the briefs and the reporter's transcript for the purpose of determining the validity of the documents offered for probate and consequently, Mrs. Di Paulo's right to appeal. In fact, the notice of motion declares that the motion "is based upon the file, Reporter's Transcript on Appeal, Appellant's Opening Brief, and papers filed herein." Under these circumstances, the motion to dismiss the appeal is not well taken.

Turning to the second procedural question, section 387 of the Code of Civil Procedure, which authorizes the inter-

vention of a third party in a pending action or proceeding, expressly provides that the motion shall be made "before trial." A motion to intervene after judgment has been entered will be denied. (*Braun* v. *Brown*, 13 Cal.2d 130, 133 [87 P.2d 1009]; *Kelly* v. *Smith*, 204 Cal. 496, 501 [268 P. 1057].) Ida Pieper did not move to intervene until after the respondent's reply brief and the notice of motion to dismiss the appeal had been filed. It was then too late for her to seek to become a party to the proceeding.

■ An executor or executrix named in a will may properly prosecute an appeal from an order revoking the probate of the will. (*Estate of Collins*, 174 Cal. 663, 664 [164 P. 1110]; *Estate of Higgins*, 158 Cal. 355, 358 [111 P. 8]; *Estate of Webster*, 43 Cal.App2d 6, 20 [110 P.2d 81, 111 P.2d 355].)

■ Upon the merits of the controversy, an appellate court is not bound by a construction of a document based solely upon the terms of the written instrument without the aid of extrinsic evidence, where there is no conflict in the evidence, or a determination has been made upon incompetent evidence. (*Western Coal & Mining Co.* v. *Jones*, 27 Cal.2d 819, 827 [167 P.2d 719, 164 A.L.R. 685]; *Moore* v. *Wood*, 26 Cal.2d 621, 630 [160 P.2d 772]; *Estate of Platt*, 21 Cal.2d 343, 352 [131 P.2d 825].) Therefore, the validity of the holographic instrument must be determined entirely by reference to the applicable statutes and principles of law.

"A holographic will is one that is entirely written, dated and signed by the hand of the testator himself. It is subject to no other form, and need not be witnessed. . . ." (Prob. Code, § 53.) ■ Although the tendency of both the courts and the Legislature has been toward greater liberality in accepting a writing as an holographic will (see, *Estate of Durlewanger*, 41 Cal.App.2d 750, 752 [107 P.2d 477]), this tendency "has never been stretched to excuse lack of substantial compliance with the statutory requirement that a holographic will must be dated by the testator." (*Estate of Carpenter*, 172 Cal. 268, 269 [156 P. 464, L.R.A. 1916E 498].)

■ And recourse may not be had to a date appearing in the body of an alleged holographic will if, obviously, the date was not intended by the testator to serve as the date of the instrument. (*Estate of Schiffmann*, 16 Cal.App.2d 650, 652 [61 P.2d 331].)

■ No particular words are necessary to show a testamentary intent but it must satisfactorily appear from the document offered as the last will and testament that the

decedent intended, by the very paper itself, to make a disposition of his property after his death in favor of the party claiming thereunder. (*Estate of Button*, 209 Cal. 325, 331 [287 P. 964]; *Estate of Kelleher*, 202 Cal. 124, 129 [259 P. 437, 54 A.L.R. 913]; *Estate of Branick*, 172 Cal. 482, 484 [157 P. 238]; *Estate of Pagel*, 52 Cal.App.2d 38, 44 [125 P.2d 853].) A case in which the facts are similar to those shown by the present record is *Estate of Pagel, supra*, where it was held that a letter written by the deceased lacked the necessary testamentary intent. The court said: ". . . the decedent made it perfectly clear by the language used in his letter that he did not intend the letter to act as a posthumous declaration, but on the contrary stated he desired that his posthumous disposition narrated in his letter should be declared in a last will and testament."

In considering whether the documents offered by Mrs. Di Paulo may be construed together to supply the omission of the date or testamentary intent, several rules must be taken into consideration. ■ In the law of wills, integration, as distinguished from incorporation by reference, occurs when there is no reference to a distinctly extraneous document, but it is clear that two or more separate writings are intended by the testator to be his will. (*Estate of Francis*, 191 Cal. 600, 601 [217 P. 746]; *Estate of Clisby*, 145 Cal. 407, 409 [78 P. 964, 104 Am.St.Rep. 58]; *Estate of Taylor*, 126 Cal. 97, 100 [58 P. 454]; *Estate of Bauer*, 51 Cal.App.2d 636, 638 [124 P.2d 630]; *Estate of Swendsen*, 43 Cal.App.2d 551, 555 [111 P.2d 408]; see, Atkinson on Wills, §§ 139, 143; 16 Cal.L.Rev. 154, 155.) Thus several writings, connected by sequence of thought (*Estate of Swendsen, supra*; *Estate of Johnston*, 64 Cal.App. 197 [221 P. 382]), folded together (*Estate of Merryfield*, 167 Cal. 729 [141 P. 259]), or physically forming one document (*Estate of Clisby, supra*; see, *Estate of Skerrett*, 67 Cal. 585 [8 P. 181]), have been admitted to probate as constituting an holographic will.

■ On the other hand, there is incorporation by reference when one of the writings is a complete testamentary instrument, and refers to another document in a manner clearly designed to accomplish that purpose. (*Simon v. Grayson*, 15 Cal.2d 531, 533 [102 P.2d 1081]; *Estate of Plumel*, 151 Cal. 77, 79 [90 P. 192, 121 Am.St.Rep. 100]; see, Atkinson on Wills, §§ 142, 143; 16 Cal.L.Rev. 155.) ■ The requisites of a valid incorporation by reference are that the incorporated document must be clearly identified and in

existence at the time the will makes reference to it. (*Simon* v. *Grayson, supra,* p. 533; *Estate of Bauer, supra,* p. 638; *Estate of Martin,* 31 Cal.App.2d 501, 505 [88 P.2d 234].)

More directly applicable to the present case is the rule that the omission of a testamentary intent or of a date from an otherwise valid holographic will is not supplied by a separate document or letter, where there is nothing to indicate that the second document is to be read or construed as part of the holographic will. (*Estate of Keith,* 173 Cal. 276, 278 [159 P. 705]; *Estate of Bauer, supra,* p. 638; *Estate of Goldsworthy,* 54 Cal.App.2d 666, 672, 673 [129 P.2d 949]; *Estate of Swendsen, supra,* p. 555; *Estate of Maguire,* 14 Cal. App.2d 388, 390 [58 P.2d 209]; *Estate of Anthony,* 21 Cal. App. 157, 162 [131 P. 96].) And the date of an holographic will may not be supplied by one not in the handwriting of the testator. (Prob. Code, § 53; *Estate of Towle,* 14 Cal.2d 261 [93 P.2d 555, 124 A.L.R. 624]; *Estate of Bower,* 11 Cal.2d 180 [78 P.2d 1012]; *Estate of De Caccia,* 205 Cal. 719 [273 P. 552, 61 A.L.R. 393]; *Estate of Clark,* 55 Cal.App. 2d 85 [129 P.2d 969].)

By several decisions, it has been held that the date of an holographic will may be that which is stated in another portion of the same document. For example, in *Estate of Skerrett, supra,* a copy of a deed of gift and an undated letter, both in the handwriting of the testator, were attached and addressed to the testator's sister. The deed was invalid because it was not delivered. The court held that the letter and the copy of the deed together constituted a valid holographic will. In reaching this conclusion it was said: ''The instrument . . . should have been admitted. It was written entirely by the hand of the deceased, it was signed by him, and a date appears at the commencement. Neither the copy of the deed nor the letter, taken by itself, constitute a will; the one is not testamentary in its character, the other has no date; but taking them together as the deceased left them, forming one document, it is complete. The first part furnishes the date, and the latter the testamentary character.'' (67 Cal. 588; see, also, *Estate of Hartley,* 181 Cal. 469 [184 P. 950]; *Estate of Olssen,* 42 Cal.App. 656 [184 P. 22].)

In *Estate of Swendsen, supra,* an holographic will was written on two separate pieces of paper, but only one of them was dated. Although the papers were not attached, and it was not apparent from looking at them that they were connected in any way, both were admitted to probate upon the

testimony of two witnesses quoting the testator as declaring that the two pieces of paper constituted his will.

However, when there is nothing to indicate an intention of the testator that the handwritten instruments be construed together, such as the papers being physically attached, or extrinsic evidence tending to prove such a purpose, the courts have refused to allow the lack of a date or testamentary intent in one document to be supplied by another totally disconnected instrument. Thus, in *Estate of Anthony, supra,* two letters addressed to different individuals were relied upon as constituting a valid holographic will. The court held that the omission of the month from the date of a letter, testamentary in character, was not supplied by the date in the other letter, apparently written upon the same day, which was not testamentary in character and did not refer to the first letter so as to incorporate it. And in *Estate of Bauer, supra,* it was held that where only one of several letters written by the testator was dated, the undated ones were not admissible as an holographic will when there was nothing to indicate that they were to be read or construed as a part of the dated writing.

Upon the question of construing separate handwritten instruments together in order to supply testamentary intent, *Estate of Keith, supra,* is in point. The court there refused to admit a letter, unsigned and addressed to the executor named in an admittedly valid holographic document, to probate although it was found inclosed in the envelope containing the valid holographic will and to which it was attached by a clamp. This holding was based upon a consideration of the intention of the testator as shown by the language of the documents themselves and by extrinsic evidence.

Applying these rules to the instruments in question, the handwritten instrument is void for lack of a date. In stating "that my will of December, 1939, is null and void, as a new will was made on April 22, 1943 . . .," the testator clearly did not intend "April 22, 1943" to be the date of his memorandum. That date was used only for the purpose of referring to and identifying the formal testamentary instrument which he had signed.

Nor do the other documents supply the requirement of a date for the holographic memorandum. There is nothing in the language of the letter to Mrs. Pieper, or the memorandum, to indicate that Wunderle intended them, as read together, to be his will, or that it was his purpose to incorporate

one of them into the other. The letter referred to one "ready for Mr. Wittmer," but does not identify the undated handwritten message as having been prepared for him. The memorandum includes no statement concerning the letter, and the record discloses no evidence to show that the undated message was either enclosed with, or attached to, the other documents sent to Mrs. Pieper by the testator. No evidence, other than the documents themselves, was introduced or received in evidence to show the intention of the testator in this regard. ▮ Furthermore, the lack of a date in the undated handwritten message may not be supplied by the integration or incorporation of the invalid formal will because the date in the instrument of April 22, 1943, is not in the handwriting of Wunderle.

▮ Also, it does not appear from the letter that Wunderle, by that paper, intended to make a testamentary disposition of his property. Considering the manner in which the invalid document of April 22, 1943, was referred to, it is clear that the testator intended to dispose of his property by the invalid formal will rather than by the letter. Nor may the intent be supplied by the other documents. Assuming the undated memorandum discloses the necessary testamentary intent, there is nothing in the record to show that the testator intended that the letter and message be construed together as forming his will. The formal will may not be used to supply the letter with the requisite testamentary intent because that document is not in the testator's handwriting.

▮ And if the letter of May 3rd was not a valid testamentary document, such as an holographic will or a codicil, it could not incorporate or have the effect of republishing or redating the other documents.

▮ For these reasons, it may not seriously be contended that the will admitted to probate was voided by the subsequent documents, because none of them was executed with the necessary statutory formalities. (Prob. Code, §§ 72, 73, 74.) This conclusion makes it unnecessary to consider any other question presented by the parties.

The motions to dismiss the appeal and to intervene are denied, and the order admitting to probate the will dated December 5, 1939, is affirmed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., and Spence, J., concurred.