[Civ. No. 21991.   First Dist., Div. Three.   July 26, 1965.]

Estate of PATRICK JOSEPH KANE, Deceased.  REGINA AUER, as Executrix, etc., Proponent and Respondent, v. DELIA DUNLEAVY et al., Contestants and Appellants.

Henry M. Jonas for Contestants and Appellants.

Robert H. Andreson for Proponent and Respondent.

DRAPER, P. J.—Three holographic documents were admitted to probate as wills of decedent. Contestants attack the order only as to the third document.

The two earlier writings, both dated in 1954, contain the preliminary statements so often thought by laymen to be appropriate to wills, and clearly are testamentary instruments. These wills left decedent's home in Tamalpais Valley to contestant Dunleavy, his niece; $700 to respondent, Mrs. Auer; and the remaining personal property in equal shares to his five nieces and nephews, one of whom joined Mrs. Dunleavy in this contest. Mrs. Auer was named executrix in each.

The third document is dated April 27, 1961, and reads "This is to certify that I give Joseph Auer and Mrs. Regina Auer Lots 10-11 and 12 House and all Improvements. Block 7 Little City Farms Tamalpais Valley Marin County California. with the understanding that I live here". Mr. Kane died May 24, 1963.

Appellants contend that no testamentary intent is shown, and that the document therefore cannot be admitted to probate.

Although extrinsic evidence was admitted, it was uncontradicted, and thus we must independently determine whether the third holograph was executed with testamentary intent (*Parsons* v. *Bristol Development Co.*, 62 Cal.2d 861, 866 [44 Cal.Rptr. 767, 402 P.2d 839]).      Mr. Kane was about 85 when he wrote this document. Mr. and Mrs. Auer had been neighbors of his in Marin County. For many years, he had dinner with them every night. In 1954, the Auers moved to San Francisco, but continued to visit Mr. Kane at his home once or twice each week. For the 10 years before his death, Mr. Kane was crippled. Mr. and Mrs. Auer did his shopping and banking for him. After Mr. Auer's death, in November 1961, Mrs. Auer continued to perform these services. Decedent's niece, Mrs. Dunleavy, had not seen him since 1949 or 1950. Before his final illness, Mr. Kane had told Mrs. Auer to look in the bureau drawer "if something happens." When he was hospitalized May 8, 1963, Mrs. Auer went to his house and found in the bureau drawer the disputed document and one of the 1954 wills. She told Mr. Kane that she had found the wills, and he made no comment.

Appellants argue that the document on its face shows that it was intended as an *inter vivos* transfer, and not as a will. Since it was never delivered, it could not be effective as a deed and thus, say appellants, it is wholly ineffective.

But the case upon which appellants principally rely (*Tennant* v. *John Tennant Memorial Home,* 167 Cal. 570 [140 P. 242]), is not controlling. There the document concededly was a deed in form. It was argued that its reservations made it ineffective as a deed, and that it should be deemed a testamentary instrument. The contention was rejected by the court.

Here, however, the questioned document uses no formal language of deed. ■ The word "give" is appropriate to testamentary disposition (*Estate of Button,* 209 Cal. 325, 332 [287 P. 964]). In its context here, it seems more the language of will than of deed. ■ A present desire to transfer is negated by failure to deliver the document (*Estate of Beffa,* 54 Cal.App. 186, 190 [201 P. 616]), or even to mention it to the "grantees" in his frequent meetings with them. Testamentary intent is indicated by decedent's careful retention of the document for two years in the bureau drawer to which he directed proponent "if something happens." At age 85, his contemplation of death is reasonably inferable. The close, almost familial relationship of decedent with the Auers also is entitled to consideration.

■ The opening phrase "this is to certify" is stressed by appellants. But this is a not uncommon usage of laymen in attempting to import formality. Certainly, it no more suggests deed than will. The closing phrase "with the understanding that I live here" could suggest, as appellants argue, a present transfer with reservation of a life estate. But there is no showing that decedent had any business experience or dealings in real estate to suggest, even remotely, that he had knowledge of any such mode of transfer. If we assume this somewhat sophisticated awareness, it doubtless would be accompanied by knowledge that delivery is essential to transfer by deed. Yet this document, although never delivered, was meticulously retained under circumstances which indicate that decedent considered it of importance "if something happens." It seems much more likely that he intended the questioned phrase only as a further description of his property.

■ Formality is not essential in a holographic will (Prob. Code, § 53). ■ From all the evidence, we are satisfied that this document was executed with testamentary intent (see *Estate of Beffa, supra,* 54 Cal.App. 186; *Estate of Gutierrez,* 189 Cal.App.2d 165 [11 Cal.Rptr. 51]; *Estate of Lampkin,* 203 Cal.App.2d 374 [21 Cal.Rptr. 513]).

Contrary to appellants' view, construction of the wills is not now before us (*Estate of Salmonski,* 38 Cal.2d 199, 207-209 [238 P.2d 966]), and contentions based upon the claimed effect of the several documents as wills cannot now be considered.

Order affirmed. Appeal from order denying new trial dismissed.

Salsman, J., and Devine, J., concurred.